IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM EVANS, JOHN SNIPES, DAVID WALTON, and JEFFREY OWENS, Plaintiffs, | ) | |
| and | ) | CAUSE NO. 1:16-CV-60 |
| LINCOLN APARTMENTS, LLC, MEDALLION MANAGEMENT, INC, and PHILIP HEINZ (in his official and individual capacities), Defendants. | ) | |

COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, Plaintiffs, by and through their counsel, Alexandra M. Curlin and do hereby file a complaint for housing discrimination, reckless disregard and indifference of civil rights, and intentional infliction of emotional distress and respectfully request a jury trial in this cause.

## I. INTRODUCTION

In this action, which is brought pursuant to 42 U.S.C. § 3601, the federal Fair Housing Act, Plaintiffs seek monetary, declaratory, and injunctive relief against Defendants due to Defendants' discrimination against them on the basis of race, color, and disability; Defendants' harassment of them, which caused a hostile environment; and Defendants' retaliation against them when Plaintiffs exercised their fair housing rights provided under federal law.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 because this Action seeks relief under federal laws. This Court has jurisdiction over Plaintiffs' state law

claims under 28 U.S.C. § 1367 because those claims arise out of the same events and actions and are also the basis of the case and/or controversy against Defendants.

2. Venue is proper in the Southern District of Indiana, Indianapolis Division, because all of the Plaintiffs live in Marion County, Indiana, Lincoln Apartments is located in Marion County, Indiana, and all relevant actions took place in Marion County, Indiana.

## III. PARTIES

3. Plaintiffs are all current or former residents of Lincoln Apartments.

a. William Evans ("Evans"), a disabled African American, is an Army veteran, eligible for housing at Lincoln Apartments. He currently resides at Lincoln Apartments at 230 N. Holmes St., Apt. 232, Indianapolis, IN 46222

b. David Walton ("Walton"), a disabled African American, is an Army veteran, eligible for housing at Lincoln Apartments. He was evicted from Lincoln Apartments and now resides at 3340 N. Meridian St., Apt. 107, Indianapolis, IN 46204.

c. John Snipes ("Snipes"), a disabled African American, is a Navy veteran, eligible for housing at Lincoln Apartments. He was evicted from Lincoln Apartments and resides at 725 N. Pennsylvania St., Rm. 424, Indianapolis, IN 46204.

d. Jeffrey Owens ("Owens"), a disabled African American, is an armed forces veteran, eligible for housing at Lincoln Apartments. He currently resides at 3417 N. Rybold Avenue, Indianapolis, IN 46222.

4. Defendant Lincoln Apartments, LLC, ("Lincoln") located at 320 N. Meridian St., Ste. 516, Indianapolis, IN 46204 is the principal of Lincoln Apartments Veteran Housing located at 530 N. Holmes St., Indianapolis, IN 46222. Lincoln receives financial assistance from various federal agencies, including but not limited to the U.S. Department of Housing and Urban

Development for the purpose of providing affordable, safe housing options to disenfranchised individuals. Lincoln receives tax credits for this purpose through the Indiana Housing & Community Development Authority. Lincoln ownership and management had knowledge that residents were being mistreated in violation of the federal Fair Housing Act

5. Medallion Management, Inc. ("Medallion") is the entity hired by Lincoln to operate Lincoln Apartments and provide day to day management of the apartments. Medallion is located at 834 King Highway, Ste., 100, Kalamazoo, MI 49001. Medallion is part of a family of companies that manages apartment complexes in Michigan. Upon information and belief, Lincoln is the only apartment complex it manages in Indiana. Medallion had knowledge that residents were being mistreated in violation of the federal Fair Housing Act.

6. Philip Heinz ("Heinz"), whose last known address was 530 N. Holmes Aveunue, Apt. 121 Indianapolis, IN 46222, was hired by Medallion to be the onsite operations manager of Lincoln Apartments. His management created a hostile environment because he actively discriminated against individuals on the basis of their race, color, and disability. He created and implemented the incident report system that was arbitrary and designed to harass African American and disabled residents. He used the referral system to take unwarranted disciplinary actions against certain residents that were as severe as eviction and the incurring of fines. All of the actions taken by Heinz were within the course and scope of his responsibilities as the manager of Lincoln Apartments.

<u>FACTS APPLICABLE TO ALL COUNTS</u>

7. Lincoln is self described as a 75-unit permanent supportive housing development for homeless veterans. It opened in November of 2013. The goal was for the apartment complex

to have support service partners that would provide external services to the residents to prevent homelessness.

8. Lincoln partnered with the Veterans' Affairs Department to provide services to residents. They also partnered with Volunteers of America to provide services to residents. Lincoln provided space to each of these entities on site for that purpose.

9. Medallion manages and coordinates the support services program at Lincoln. The services offered focus on the following: responsibility and self sufficiency, peer support for recovery, health or the well being of the person or family served, enhancement of the quality of life, reduction of symptoms and development of coping mechanisms, empowering "self-managed" behaviors, person centered service delivery, and family reunification, when appropriate.

10. Lincoln is strategically located within a close proximity to a supermarket, bank, local restaurants, retail shops, and the IndyGo bus service.

11. Lincoln includes common areas such as a food pantry, conference room, picnic area, a computer lab, and a furnished community room with a full service kitchen, television with cable, and dining tables for residents.

12. Walton moved into Lincoln on or about December 2013; Snipes moved into Lincoln on or about December 2013; Owens moved into Lincoln on or about December 2013; and Evans moved into Lincoln on or about February 2014.

13. Heinz immediately began to create a hostile environment by using derogatory racial slurs such as "nigger." On or about March 2014, Evans attended a meeting called by Heinz wherein Heinz stated a goal of evicting certain African American residents from Lincoln. Heinz then assigned "watch captains," which were other residents assigned to watch Plaintiffs

and gather evidence against them in order to evict them. When a "watch captain" would report disciplinary infractions, Heinz wrote "incident reports" that would document what Heinz would categorize as bad behaviors. The incident reports were then used to threaten residents with eviction or other discipline.

14. Heinz knew that Lincoln's residents were individuals dealing with substance abuse or other debilitating disabilities. Heinz deliberately took actions against them and tried to provoke them in order to harass them and ultimately deprive them of their rights by forcing them to move.

15. Walton, who has a physical disability, received therapeutic assistance from an associate to treat his condition. Walton provided the associate a key to his apartment to facilitate the care he was receiving.

16. Heinz wrote four incident reports against Walton, within a two to three week time period, regarding the associate. The reasons for the referrals ranged from Heinz's opinion that the associate had been there too long or that the associate was walking around the complex unescorted.

17. In April, when Walton was not home, Heinz began knocking on Walton's door while the associate was there waiting for Walton and yelling at the associate through the door. The associate was scared and did not allow Heinz entrance. Heinz subsequently banned the associate from the premises, effectively preventing Walton from receiving the medical assistance he needed.

18. When Walton confronted Heinz regarding the incident, Walton received an incident report. The referral said simply, "Guest lied to you about what happened. For this reason we are issuing a no trespass. Do not violate this no trespass."

19. Walton complained to Heinz that there was a Caucasian resident that continually referred to other African American residents as "niggers," yet Heinz never addressed the Caucasian resident and never gave him an incident report for the same. In fact, multiple residents heard Heinz also refer to African American residents as "niggers."

20. In June of 2014, Walton and a group of African American residents believed the treatment they were receiving was discriminatory and made an appointment to speak with Congressman Andre Carson to file a complaint against Lincoln. After this meeting, Heinz began specifically targeting Walton.

21. Walton began receiving more incident reports for arbitrary issues such as "talking too loudly" or "disturbing" other tenants. Heinz would say that he had been receiving complaints about Walton from other tenants, but when asked details about the complaints, Heinz refused to discuss them.

22. Heinz accused Walton, who does not smoke, of unauthorized smoking and gave him an incident report for it, despite Walton's insistence that he does not smoke.

23. Another Caucasian resident entered Walton's apartment without permission. Both food items and money were missing as a result. When Walton complained about the incident to management, neither Heinz nor Medallion took any action. Yet, Walton had received multiple incident reports based purely on the accusations of unidentified individuals.

24. Walton went on vacation in August 2014. While on vacation, he received calls from fellow residents that his car had been ticketed by Lincoln. Walton called Lincoln office management to inform them he was on vacation and had made arrangements for his car to be moved to his sister's house. He was told by staff that was okay. Management then had his car towed anyway. Walton incurred unnecessary fees for the tow and storage of the vehicle and

ultimately lost the vehicle because he was unable to pay the fees.  The loss of the vehicle had a significant negative impact on Walton's life and independence.  Walton complained to Medallion, who was completely indifferent to his claim.

25. In October, Heinz came to the computer lab while Walton was there.  Heinz began yelling and cursing at Walton to leave the computer lab.  As Walton was leaving, Heinz tried to block the exit to force a physical confrontation.  Heinz then physically assaulted Walton.  Heinz later admitted to police that he provoked Walton so that he could evict him from the apartment.

26. Heinz harassed Walton's guests and told them they had to leave.

27. On December 31, 2014, Walton's lease was up.  Lincoln refused to renew the lease.  Lincoln did not provide him or assist him with a housing choice voucher upon leaving, which forced Walton to lose his rent subsidy.

28. Evans was present at the March 2014 meeting wherein Heinz tried to enlist the help of residents to evict certain African American residents.

29. Evans began speaking out against what he believed was discrimination.  When that occurred, he too became a target.

30. Evans began receiving incident reports for "talking loudly" and "disrupting" tenants.

31. Evans felt his housing was in jeopardy based on his advocacy.

32. Heinz blocked Evans' access to the computer room because Heinz saw Evans talking with Walton.

33. As Evans continued to advocate for the residents he felt were suffering discrimination, he began to be harassed by individuals close to Heinz.  He was yelled at and

cursed at by these individuals. Evans had to call the police on multiple occasions to ensure his safety.

34. When Evans filed a complaint against Defendants, he received an incident report and Defendants blocked his access to the computer lab.

35. Owens also lived at Lincoln. On many occasions, Owens heard Heinz refer to African Americans as "you people." He heard Heinz tell other Caucasian residents that he "need[ed] to get these niggers out of here."

36. In May of 2014, Owens began receiving incident reports. He received reports for "open alcohol in common area." He received this report despite the fact that many Caucasian residents had alcohol in common areas and did not receive similar reports.

37. On May 24, 2014, Owens received three incident reports. These reports were arbitrary and accused Owens of actions such as "too much noise."

38. One of the watch captains assigned by Heinz complained that Owens threatened him with bodily harm, which Owens denied. Owens received an incident report anyway.

39. Owens received another incident report on May 27 for smoking, despite the fact that many other residents smoked without consequence.

40. Owens received another report on May 31 for having open alcohol. Owens did not have alcohol and told Heinz that. Heinz told Owens he wanted to smell the cup Owens was holding. Owens did not allow him to do so and Heinz gave him an incident report.

41. On June 1, 2014 Owens received another report for open alcohol. On June 10, 2014 he received a report for talking in the computer lab.

42. Faced with constant harassment, Owens made a complaint to Congressman Andre Carson's office.

43. On July 30, 2014 Owens was in the community room. He was not drinking alcohol but had a drink in a closed container. Heinz asked him if he could smell the container and Owens refused. Owens was again disciplined. Heinz began refusing to accept Owens' rent payments.

44. On October 22 Owens again received notice that he would be evicted. Management blocked his use of the public computer lab.

45. Snipes also lived at Lincoln and suffered discrimination. Between April and May 2014, he too received arbitrary incident reports. For examples, Snipes received reports for being "too loud" or using "inappropriate language." He also received an incident report for smoking. These were actions in which most residents engaged but did not receive incident reports.

46. One of the incident reports Snipes received said the following: "Driving intoxicated, loud and open beverages on Lincoln Property. Apparently 'you pay your bills and do what the fu… you want' reguardless [sic] of your lease or your fellow tenants."

47. Heinz referred to Snipes as a "nigger" and constantly taunted him about his sobriety and threatened that he would lose his housing.

48. Snipes brought a Veterans' Affairs representative with him to a meeting with Heinz to mediate some of the issues Snipes was having. Heinz was so disruptive and belligerent throughout the meeting the representative left frustrated.

49. When Snipes got into disagreements with other residents, Snipes was accused of "threatening" those residents and received incident reports as a result.

50. By May 27, Snipes had received seven incident reports. By June 3, Lincoln notified Snipes that his lease would be terminated.

51. Defendants had knowledge that the population at Lincoln was an at risk population with issues of Post Traumatic Stress Disorder and substance abuse issues. Rather than accomplish its mission to provide these individuals with a safe, secure, permanent home with services necessary to maintain that stability, Defendants deliberately, actively, indifferently, and recklessly provoked, harassed, and discriminated against these residents due to their race, color, and/or disability, which caused them to suffer great emotional harm and even caused major setbacks in recovery for some individuals.

COUNT I- VIOLATION OF THE FAIR HOUSING ACT

52. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 52 as previously pleaded.

53. Defendants violated 42 U.S.C. §§ 3601 *et. seq*. by discriminating against Plaintiffs on the basis of race, color, and/or disability.

54. Defendants discriminated against Plaintiffs by applying different terms and conditions of housing to them, by creating a hostile housing environment, and by failing to reasonably accommodate individuals with disabilities.

55. Defendants harassed Plaintiffs by constantly and unreasonably disciplining them. When Plaintiffs complained either to Congressman Carson or to the Indiana Civil Rights Commission, Defendants retaliated against Plaintiffs.

56. As a result, Plaintiffs individually and collectively suffered harm including losing the right to equal and fair housing.

COUNT II- VIOLATION OF THE INDIANA FAIR HOUSING ACT

57. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 56 as previously pleaded.

58. Defendants violated IC 22-9.5-1-1 by discriminating against Plaintiffs, by creating a hostile housing environment, by applying different terms and conditions of housing to them, by failing to offer necessary reasonable accommodations for their disabilities, and by retaliating against Plaintiffs.

COUNT III- VIOLATION OF 42 U.S.C. § 1981

59. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 58 as previously pleaded.

60. Defendants have violated 42 U.S.C. § 1981 because they have deprived them and other African Americans of full and equal rights and benefits under the law based on their race and/or color and Plaintiffs have suffered damages as a result.

COUNT IV- VIOLATION OF 42 U.S.C.§ 1982

61. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 60 as previously pleaded.

62. Defendants have violated 42 U.S.C. § 1982 by violating Plaintiffs' and other African Americans' right to lease personal property and Plaintiffs have suffered damages as a result.

COUNT V- VIOLATION OF 42 U.S.C. § 1985

63. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 62 as previously pleaded.

64. Defendants have violated 42 U.S.C. § 1985 by conspiring to deprive them and other African Americans of equal protection of the laws and/or equal privileges under the laws.

COUNT VI- VIOLATION OF 42 U.S.C. § 3617

65. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 64 as previously pleaded.

66. Defendants have violated 42 U.S.C. § 3617 by intimidating, threatening, and interfering with Plaintiffs' and other African Americans' rights to enjoy equal and fair housing.

COUNT VII- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. Plaintiffs hereby replead and incorporate by reference paragraphs 1 through 66 as previously pleaded.

68. Defendants have through their negligence, deliberate and reckless indifference, as well as discrimination intentionally inflicted emotional distress upon Plaintiffs that have caused Plaintiffs emotional, financial, and physical damages.

DEMAND FOR JURY TRIAL and PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment and relief including:

1. A permanent injunction prohibiting Defendants from continuing all unlawful practices complained about herein and imposing affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of race, color, or disability;

2. A declaration that Defendants discriminated against Plaintiffs on the basis of race, color and disability in violation of the Federal Fair Housing Act and the Indiana Fair Housing Act;

3. An award of compensatory, statutory, and punitive damages in an amount to be determined at trial;

4. For reasonable attorney's fees and costs; and

     5. All other relief the Court deems just.

WHEREFORE, for the foregoing reasons, Plaintiff hereby respectfully requests that this Court find in Plaintiff's favor and order all relief deemed just in the premises.

Respectfully submitted,

[signature]

Alexandra M. Curlin, (#24841-49)
CURLIN & CLAY LAW
8555 Cedar Place. Dr., Ste. 112
Indianapolis, IN 46240
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@curlinclaylaw.com

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by way of certified mail this 5th day of January, 2016.

Scott Beltz
Medallion Management, Inc.
834 King Hwy. Ste. 100
Kalamazoo, MI 49001

Fred Hash
Lincoln Apartments, LLC
320 N. Meridian St., Ste. 356
Indianapolis, IN 46204

Philip Heinz
530 N. Holmes Avenue, Apt. 121
Indianapolis, IN 46222

Alexandra M. Curlin